**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| **BLAKE ELWOOD** and **TERRY MERRIFIELD**, individually and on behalf of all others similarly situated,<br><br>     *Plaintiffs*,<br><br>   v.<br><br>**SUNBEAM PRODUCTS INC.**<br><br>     *Defendant.* | **Case No.:**<br><br>**CLASS ACTION**<br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiffs, Blake Elwood and Terry Merrifield ("Plaintiffs"), individually and on behalf of all others similarly situated ("Class"), by and through their attorneys, alleges upon information and belief, except for those allegations pertaining to Plaintiffs, which are based on personal knowledge:

**NATURE OF THE ACTION**

1. This is a consumer class action arising out of Defendant Sunbeam Products, Inc. ("Defendant") manufacture and sale of "about 1,290,000" defective Oster French Door Countertop Ovens" ("Products"), which were recalled on September 25, 2025, due to a risk that "The oven's doors can unexpectedly close, posing a burn hazard to consumers" ("Defect").[1]

2. The Products were advertised, sold, and installed across the United States without adequate warnings or safeguards related to the Defect.

3. The Product is defective due to the spring system used to open and close the doors,

---

[1] https://www.cpsc.gov/Recalls/2025/Sunbeam-Products-Recalls-More-than-One-Million-Oster-French-Door-Countertop-Ovens-Due-to-Burn-Hazard

which can cause the oven doors to quickly swing shut without notice or prompting by the user. This causes the superheated doors to clamp onto the arms of the user who is reaching in the oven, resulting in severe burns and injuries.

4.    Defendant provided no warning of the Defect, and Plaintiffs would not have purchased said item if they had known of the Defect.

5.    Other manufacturers formulate, produce, and sell non-defective ovens with production methods that do not cause the Products' heated doors to close while the consumer's hand and/or arms are reaching into the oven, which is evidence that the Product's Defect is demonstrably avoidable.

6.    Feasible alternative formulations, designs, and materials are currently available and were available to Defendant at the time the Products were formulated, designed, and manufactured.

7.    All consumers who purchased the worthless and dangerous Products have suffered losses.

8.    Defendant's failure to disclose the Defect at the time of sale – and its refusal to assume responsibility for the resulting effects- constitutes consumer deception, unjust enrichment, breach of contract, and breach of warranties.  Plaintiffs and the Class would not have purchased the Products, or would have paid significantly less, had they known of the Defect and limited recourse available.

9.    As a result of the above losses, Plaintiffs seek damages and equitable remedies on behalf of their selves and the Class.

**FACTUAL BACKGROUND**

10.    On September 25, 2025, the United States Consumer Product Safety Commission ("CPSC") announced a recall of the Products due to the Defect.[2]

11.    This recall involves Oster French Door Countertop Ovens with model numbers TSSTTVFDXL, TSSTTVFDDG, TSSTTVFDMAF, TSSTTVFDDAF.  A label on the backside of the oven identifies the model number.  In addition, the original packaging has information identifying the model number.  "Oster" is engraved on the front bottom right of the oven.[3]

12.    The recall states that the Product's doors can unexpectedly close, posing a burn hazard to consumers.

13.    The CPSC disclosed that the company received ninety-five complaints of the doors of the Products unexpectedly closing, resulting in burn injuries to consumers, including two reports of second-degree burns.

14.    The Products were sold at Bed Bath and Beyond, Costco, Walmart and other stores nationwide and online at Amazon.com and Overstock.com from August 2015 through July 2025 for between $140 and $250.[4]

15.    Despite the Recall, Defendant's only remedy is to provide the consumer with a repair kit, requiring the consumer to install a clip-on device that provides additional holding force to help keep the doors in the open position when reaching into the oven; along with repair instructions and a QR code link to an installation video.  The Defendant does not offer refunds for the defective, worthless Products. This remedy is inadequate as it fails to provide consumers any

---

[2] https://www.cpsc.gov/Recalls/2025/Sunbeam-Products-Recalls-More-than-One-Million-Oster-French-Door-Countertop-Ovens-Due-to-Burn-Hazard

[3] *Id*.

[4] https://www.cpsc.gov/Recalls/2025/Sunbeam-Products-Recalls-More-than-One-Million-Oster-French-Door-Countertop-Ovens-Due-to-Burn-Hazard

assurances that it will work and also imposes an additional burden upon themselves to properly repair the Defendant's product with the hope it can be used safely. This "repair" was never part of the original bargain that plaintiffs entered into with the Defendant or its authorized retailers when they bought the oven.

16. Defendant is a large and sophisticated corporation that has been in the business of producing, manufacturing, selling, and distributing consumer products for many years, including producing and manufacturing the recalled Products.

17. Defendant is in the unique and superior position of knowing how its products are manufactured and the steps needed to produce safe products.

18. Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing, and eventual end-use, of its Products. In this case, it has received over 90 complaints regarding this defect and, yet waited, before participating in a recall.

19. Such information related to the Defect is not information that is reasonably accessible to Plaintiffs and Class Members. The only possible way for Plaintiffs and the Class Members to discover the Defect would be to conduct their own testing of the Products prior to purchase. No reasonable consumer would undertake such a testing prior to purchase, nor would any reasonable vendor allow such testing.

20. Defendant has a duty to provide consumers, like Plaintiffs and Class Members, with accurate information about its Products.

21. Thus, Defendant's deceptive omissions regarding the Products' Defect are likely to deceive and mislead consumers and the public, as such omissions have already deceived and misled Plaintiffs and the Class Members.

22. Defendant's deceptive omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

23. Plaintiffs and the Class Members reasonably relied to their detriment on Defendant's misleading omissions.

24. In making the false, misleading, and deceptive omissions described herein, Defendant knew and intended that consumers would pay a premium for the Products marketed without the likelihood of the oven's heated doors to unexpectedly close over comparable products not so marketed.

25. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiffs and the Class Members in that they:

a. Paid a sum of money for Products that were not what Defendant represented;

b. Paid a premium price for Products that were not what Defendant represented;

c. Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted;

d. Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented;

e. Were denied the benefit of the properties of the Products Defendant promised;

26. Had Defendant not made the false, misleading, and deceptive omissions, Plaintiffs and the Class Members would not have been willing to pay the same amount for the Products they purchased and, consequently, Plaintiffs and the Class Members would not have been willing to purchase the Products.

## JURISDICTION AND VENUE

27.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332, because (1) this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class, including Plaintiff Terry Merrifield, who are citizens of states different from Defendant, and (4) there are more than 100 putative Class Members.

28.     This Court has personal jurisdiction over Defendant as it has its principal place of business within Georgia and within the jurisdiction of this District and Court. Defendant has also purposefully availed itself to the laws, rights, and benefits of the State of Georgia and this District.

29.     Venue is proper under 28 U.S.C. 1391(b) because Defendant maintains a principal place of business in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

## PARTIES

30.     Plaintiff Blake Elwood is a resident and citizen of Port St. Lucie, Florida.  Port St. Lucie is located in St. Lucie County.

31.     Plaintiff Elwood purchased the Product in 2022 from QVC.  The model of the Product is TSSTTVFDDG.  Mr. Elwood used the Product as intended by Defendant and while removing food from the Product, Mr. Elwood was burned on his arm when the heated doors closed unexpectedly.  Mr. Elwood was never warned of the Defect.

32.     Plaintiff Terry Merrifield is a resident and citizen of Cleveland, Ohio.  Cleveland is located in Cuyahoga County.

33.     Plaintiff Merrifield purchased her Product on-line.  The model number of the

Product is TSSTTVFDDAF.  Ms. Merrifield used the Product as intended by Defendant and while removing food from the Product the heated door unexpectedly closed causing the area in between Ms. Merrifield's thumb and forefinger on her right hand to be burned.

34.    Defendant has its principal place of business located at 6655 Peachtree Dunwoody Road, Atlanta, Georgia 30328.

35.    Defendant specializes in the production of electronic home appliances, such as the defective countertop oven in question.

## CLASS ALLEGATIONS

36.    Plaintiff brings this nationwide class action individually, and on behalf of all similarly situated individuals, pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

37.    The Class that Plaintiff seeks to represent is defined as follows:

**Nationwide Class**: "All consumers who purchased the recalled Products with model number TSSTTVFDXL, TSSTTVFDDG, TSSTTVFDMAF or TSSTTVFDDAF in the United States during the Class Period (August 2015 through July 2025)".

38.    Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

39.    Plaintiffs reserve the right to amend the definitions of the Classes or add a Class or Subclass if further information and discovery indicate that the definitions of the Classes should be narrowed, expanded, or otherwise modified.

40.    Numerosity: Class Members are so numerous that joinder of all members is impracticable.  Plaintiffs believe that there are thousands of consumers in the Class who are Class

Members as described above who have been damaged by Defendant's deceptive and misleading practices.

41.    Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.    Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.    Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

c.    Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

d.    Whether Defendant's false and misleading statements and omissions concerning its Products were likely to deceive the public; and

e.    Whether Plaintiffs and the Class are entitled to money damages under the same causes of action as the other Class Member

42.    Typicality: Plaintiffs are of the Class. Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products. Plaintiffs are entitled to relief under the same causes of action as the other Class Members.

43.    Adequacy: Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the Class Members they seek to represent, their consumer fraud claims are common to all members of the Class, they have a strong interest in vindicating their

8

rights, they have retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

44.    Predominance: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

45.    Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.  The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.  The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.  When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude their maintenance as a class action;

f.  This class action will assure uniformity of decisions among Class Members;

g.  The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.  Class Members' interests in individually controlling the prosecution of separate actions are outweighed by their interest in efficient resolution by a single class action; and

i.  It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase its Products.

46.     Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CAUSES OF ACTION

### COUNT I: STRICT LIABILITY MANUFACTURING DEFECT
### O.C.G.A. §51-1-11(b)(1)

47.     Plaintiffs incorporate all previous paragraphs as if fully set forth herein.

48.     Defendant was the manufacturer of the defective Products. The product was sold to consumers through major retail outlets- both in store and online.

49.     The Product when sold to the Plaintiffs and Class Members was not merchantable and reasonably suited for the use intended due to a defect that caused the heated doors to unexpectedly close when using the Products.

50.    The Products' defective condition proximately caused injuries to both named plaintiffs and other members of the putative class as evidenced by the CPSC report.

## COUNT II: NEGLIGENT MANUFACTURING DEFECT

51.    The Defendant had a legal duty to conform to a standard of conduct for the protection of Plaintiffs and the Class Members against an unreasonable risk of harm.

52.    The Defendant has manufactured this product since 2015 and, during this time, became aware of at least 95 reports of the doors closing unexpectedly causing burn injuries to consumers.  The volume of injuries evidence that the defect existed at the time it left the manufacturer.  The Defendant's   continued production of a product with this known defect is obvious negligence.

52.    Defendant breached its duty to protect Plaintiffs and Class Members against an unreasonable risk of harm when it sold defective Products to the Plaintiffs and Class Members.

53.    Defendant's breach of its duty to protect the Plaintiffs and Class Members against an unreasonable risk of harm caused the injuries suffered by the Plaintiffs and Class Members.

54.    Defendant failed to exercise reasonable care when manufacturing the Products because the Product was not reasonably safe for its intended or foreseeable uses due to the Products defect that caused the heated doors to unexpectedly close when using the Product.

## COUNT III: BREACH OF EXPRESS WARRANTY

55.    Plaintiffs incorporate all previous paragraphs as if fully set forth herein.

56.    Defendant, through its advertising and marketing expressly warranted that the Products were safe to use and free from the Defect.  Specifically, the description of the recalled Product states the Product's "French doors open with a single pull, making inserting and removing

11

meals easy and convenient".[5]

57.     Defendant breached this express warranty by providing Products that contained a Defect that allowed the doors to close unexpectedly and burn consumers and, in so doing, failed to live up to its expressed claims of providing a means for "inserting and removing meals easy and convenient."

58.     Plaintiffs and the other Class Members read and relied on these express warranties provided by Defendant in the description, labeling, marketing, and advertising for the Products.

59.     Defendant was given notice of this breach through multiple complaints of the Defect related to the Product.  Specifically, the Defendant had adequate notice of the Products' Defect as there were over ninety reports of the doors unexpectedly closing, resulting in burn injuries to consumers.[6]

60.     As a result of the breach, Plaintiffs and the Class have suffered damages.

## COUNT IV: BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY
## O.C.G.A. §11-2-314

61.     Plaintiffs incorporate all previous paragraphs as if fully set forth herein.

62.      O.C.G.A. §11-2-314 governs the implied warranty of merchantability in sales contracts. It provides that, unless excluded or modified, a warranty that goods shall be merchantable is implied if the seller is a merchant with respect to goods of that kind.

63.     The Defendant is a "seller" as contemplated by the governing statute and the counter ovens are "goods" according to statute.

64.     The spring system on the doors was defective and presented a burn hazard to

---

[5] https://www.oster.com/cooking-appliances/countertop-ovens/oster-manual-french-door-air-fry-oven/SAP_2142004.html
[6] https://www.cpsc.gov/Recalls/2025/Sunbeam-Products-Recalls-More-than-One-Million-Oster-French-Door-Countertop-Ovens-Due-to-Burn-Hazard

consumers who used the product as intended by having doors capable of closing unexpectedly while inserting or removing food. As such, the defect rendered the product unmerchantable.

65. The Defect with the doors rendered the Products "unmerchantable" at the time of sale. Such lack of merchantability is a breach of warranty

66. This breach both factually and proximately caused damages to Plaintiffs through their loss of funds and the deprivation of the benefit of the bargain.

## COUNT V: UNJUST ENRICHMENT

67. Plaintiffs incorporate all previous paragraphs as if fully set forth herein.

68. Plaintiff asserts this claim in equity or quasi contract should the court deem there is no other binding contract between the parties available that would provide plaintiffs with a remedy. The plaintiffs (1) conferred a benefit on the defendant in the form of monetary payment either directly or through authorized third party retail outlets.; (2) the defendant had knowledge of the benefit by receiving monies for the units sold.; (3) the defendant voluntarily accepted and retained the benefit-indeed, even with this massive recall they are not offering a refund; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it.

69. These benefits were not donations or gifts to Defendant; such benefits were given in exchange for Products.

70. As a result of Defendant's wrongful and deceptive conduct alleged herein, Defendant knowingly and voluntarily accepted wrongful benefits from Plaintiffs.

71. In so doing, Defendant acted with conscious disregard for the rights of the Plaintiffs and Class Members.

72. Plaintiffs and Class Members paid for Products that were safe, and free from the

13

Defect. Instead, Plaintiffs and Class Members received Products that are unsafe and have the Defect.

73.     As a result of Defendant's wrongful conduct as alleged herein, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Class.

74.     Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

75.     In light of the monetary benefit conferred upon the defendant, its knowledge of numerous complaints regarding the defect, and its inadequate remedy to address the defect, having them retain the revenue received for the sale of the countertop ovens would be inequitable and unjust.

76.     Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiffs and members of the Class all wrongful or inequitable proceeds received by them, plus interest thereon.

77.     Plaintiff and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available under the laws.

### COUNT VI: NEGLIGENT MISREPRESENTATION

78.     Plaintiffs incorporate all previous paragraphs as if fully set forth herein.

79.     Defendant made a false representation in that it claimed that the Products "French doors open with a single pull, making inserting and removing meals easy and convenient".[7]  Such a representation is material, as Plaintiffs and Class Members would not have purchased the item had they known that the doors would close on them unexpectedly and expose them to a burn

---

[7] https://www.oster.com/cooking-appliances/countertop-ovens/oster-manual-french-door-air-fry-oven/SAP_2142004.html

hazard.

80.    Defendant had no reasonable grounds for believing the representation that the Products made inserting and removing meals easy and convenient. The volume of reported injuries is such that the Defendant should have known about the Defect before bringing the Product to market.   Once brought to market, the Defendant knew of the Defect and continued to sell the Product and Profit for years.

81.    Defendant intended that Plaintiffs and Class Members rely on the misrepresentation regarding the absence of defects, and Defendant knew that such misrepresentations would be relied upon.

82.    Plaintiffs and Class Members would not have purchased the Products without such representations that the Products were free from defects.

83    Plaintiffs and Class Members reasonably relied on such misrepresentations and omissions.  Plaintiffs and Class Members have been damaged due to this reliance.

84.    Due to Defendant's conduct, Plaintiffs and Class Members were damaged in that they have been deprived of their benefit of the bargain and loss of purchase price.

85.    Plaintiff and Class Members seek actual damages, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's negligent misrepresentation regarding the Products.

## **JURY DEMAND**

86.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs and Class Members demand a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of their selves and the Class, prays for judgment as follows:

A.   For an order certifying the Class and naming Plaintiffs as the representative for the Class and Plaintiffs' attorneys as Class Counsel;

B.   For an order declaring that Defendant's conduct violates the causes of action referenced herein;

C.   For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

D.   For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.   For prejudgment interest on all amounts awarded;

F.   For an order of restitution and all other forms of equitable monetary relief;

G.   For injunctive relief as pleaded or as the Court may deem proper;

H.   For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit; and

I.   For an order providing for all other such equitable relief as may be just and proper.

Dated: October 23, 2025.                     Respectfully Submitted,

/s/ Andre R. Bélanger
Andre R. Bélanger (Georgia Bar No. 216527)
**POULIN | WILLEY | ANASTOPOULO**
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536
Email: andre.belanger@poulinwilley.com
            cmad@poulinwilley.com

*Attorney for Plaintiff & Proposed Class*

16